IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PHILLIP MORRIS LEWIS, | :: | CIVIL ACTION NO. |
| Inmate # GDC 510782, EF 236089, | :: | 1:07-CV-2803-JEC-WEJ |
| Petitioner, | :: | |
| | :: | |
| v. | :: | |
| | :: | |
| SHEILA OUBRE, Warden, | :: | PRISONER HABEAS CORPUS |
| Respondent. | :: | 28 U.S.C. § 2254 |

## ORDER AND
## FINAL REPORT AND RECOMMENDATION

Petitioner, Phillip Morris Lewis, a Georgia prisoner, challenges via 28 U.S.C.

§ 2254 the constitutionality of his February 2003 judgment of conviction.

Previously, this Court denied without prejudice Respondent's motion to dismiss the

petition as untimely [17], appointed counsel to represent Petitioner [18], ordered

further development of the issues related to the petition's timeliness, and granted

Petitioner leave to file an amended petition [20]. Now before the Court are

Petitioner's First Amended Petition [25], his Supplemental Response on the Issue of

Equitable Tolling [26], and his Motion to Expand the Record [27]; Respondent's

Motion to Strike the Attachments to the Amendment [28] and Petitioner's Response

[30]; Respondent's Answer-Response to Amended Petition [31]; and Respondent's

Renewed Motion to Dismiss Petition as Untimely [32], Petitioner's Response [33], Respondent's Reply [34], and Petitioner's Supplemental Response [35].

## I.      **BACKGROUND**

By jury trial in the Superior Court of Murray County, Petitioner "was found guilty of rape, aggravated sodomy, aggravated assault, criminal trespass," and four lesser crimes. Lewis v. State, 611 S.E.2d 80, 81-82 (Ga. Ct. App. 2005) (footnotes omitted). On March 5, 2003, Petitioner received, inter alia, sentences of twenty years each for rape and aggravated sodomy, but the state moved to change those sentences to life without parole under Georgia's recidivist offender statute, O.C.G.A. § 17-10-7, and, after a hearing, the trial court granted the motion on March 26, 2003. (1st Am. Pet. [25] ¶¶ 2-4.) On February 22, 2005, the Georgia Court of Appeals affirmed Petitioner's convictions and rejected his sole argument on appeal: that there was insufficient evidence to sustain his convictions. Lewis, 611 S.E.2d at 82.

On June 6, 2005, Petitioner executed and filed a state habeas petition in the Superior Court of Gwinnett County. (1st Am. Pet. ¶ 8.) On April 19, 2006, after an evidentiary hearing, the state habeas court denied the petition (id.), but remanded the case to the trial court to correct the original resentencing order because, due to "clerical errors," the order incorrectly cited the Georgia statute warranting

2

Petitioner's life sentences. The trial court corrected the order on June 28, 2006. (See

Petr.'s Suppl. Resp. Ex 1 at 60-63 [Doc. 26-3 at 20-23]; Ex. 4 [26-6].) On April 26,

2006, Petitioner filed an application in the Georgia Supreme Court for a certificate

of probable cause ("CPC") to appeal the denial of his state habeas petition, which

application the Georgia Supreme Court dismissed as untimely on November 6, 2006.

(1st Am. Pet. ¶ 9.) Petitioner filed his federal habeas petition on October 23, 2007.[1]

(Id. ¶ 10.)

Based on the foregoing, as well as other record evidence, the undersigned

reached the following conclusions regarding the running of the statute of limitations,

which conclusions the District Court adopted, with one exception, as noted below:

> The Georgia Court of Appeals affirmed Petitioner's convictions on
> February 22, 2005. Lewis, 611 S.E.2d at 82. For federal statute of
> limitations purposes, those convictions became final ten days later, on
> March 4, 2005, when the time expired for Petitioner to seek certiorari
> review in the Georgia Supreme Court. On June 16, 2005, Petitioner
> filed his first and only state habeas petition, tolling the federal
> limitations period after it had run for 103 days. On April 19, 2006, the
> state habeas court denied Petitioner relief, and on November 6, 2006,
> the Georgia Supreme Court dismissed his CPC application as untimely.
> Petitioner is entitled to statutory tolling only until May 19, 2006, when
> the thirty-day window closed for him to file a timely application for

---

[1] Although undated, Petitioner's original federal habeas petition [1] was
file-stamped in this Court on November 8, 2007, and Petitioner signed and dated his
application to proceed in forma pauperis [2] on October 23, 2007.

review of his state habeas petition. <u>See</u> O.C.G.A. § 9-14-52(b); <u>Wade v. Battle</u>, 379 F.3d 1254, 1262-64 (11th Cir. 2004) (per curiam) (holding that untimely CPC application in Georgia does not toll federal limitations period). Petitioner filed the instant petition no earlier than October 23, 2007. By then, 522 days had elapsed untolled since May 19, 2006, and 625 days overall, during which time the federal limitations period had expired. Accordingly, the undersigned reports that, absent the application of equitable tolling, the instant petition is untimely by 260 days.

(Report and Recommendation ("R&R") [10] at 5-6; <u>see</u> Order of Sept. 23, 2008 [14] at 6 (noting that intervening change in Eleventh Circuit law, applying mailbox rule to state habeas petitions in Georgia, changed filing date for Petitioner's state habeas petition from June 16, 2005, when it was file-stamped in Gwinnett County Superior Court, to June 6, 2005, when he executed it).) The undersigned also concluded that, based on the evidence of record regarding Petitioner's mental condition, equitable tolling and the actual innocence exception do not apply here. (R&R at 6-8.) The District Court adopted that recommendation and dismissed Petitioner's federal habeas petition as untimely [14], but, upon reconsideration, allowed him the opportunity to present additional evidence and argument regarding the timeliness of his petition [17], which he has done [26, 27]. Petitioner argues that his petition is timely based on (1) the rules of statutory tolling as applied to (a) his CPC application, (b) his second resentencing, and (c) his failure to seek certiorari review in the

4

Georgia Supreme Court on direct appeal, and (2) the application of the doctrine of equitable tolling arising from his severe mental illness and his actual innocence. (<u>See generally</u> Suppl. Resp. [26].) Respondent has renewed the motion to dismiss the petition as untimely [32].

## II. <u>DISCUSSION</u>

### A. <u>The Law of Time Bar for Federal Habeas Petitions</u>

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides, in pertinent part, that an applicant for federal habeas review of a state judgment of conviction must file his 28 U.S.C. § 2254 petition within one year of the latest of the following dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Where, as here, the provisions of 2244(d)(1)(B)-(D) do not apply, the federal limitations period is triggered by the finality of the judgment of conviction at issue, i.e., "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). If a federal habeas petitioner convicted in Georgia has obtained appellate review in the Georgia Court of Appeals, but has not sought certiorari review in the Georgia Supreme Court, his judgment of conviction becomes final when the ten-day period for seeking certiorari review expires. See Ga. Sup. Ct. R. 38 (allowing ten days to file notice of intent to seek certiorari review in Georgia Supreme Court); Pugh v. Smith, 465 F.3d 1295, 1300 (11th Cir. 2006) (holding that "court of last resort in Georgia is its supreme court" and, therefore, because petitioner could have sought direct review of his judgment of conviction there, he "was not entitled to petition the Supreme Court of the United States for a writ of certiorari and was not entitled to the 90-day period for filing that petition"). If a federal habeas petitioner convicted in Georgia has obtained, or at least sought, review of his judgment of conviction in the Georgia Supreme Court, but has not

6

sought certiorari review in the United States Supreme Court within the ninety-day time limit for doing so, then his judgment of conviction becomes final under 28 U.S.C. § 2244(d)(1)(A) at the close of that ninety-day window. <u>See</u> Sup. Ct. R. 13.1 (allowing ninety days to file certiorari petition in United States Supreme Court seeking review of "a judgment . . . entered by a state court of last resort" or "a judgment of a lower state court that is subject to discretionary review by the state court of last resort" after court of last resort has denied review); <u>Bond v. Moore</u>, 309 F.3d 770, 774 (11th Cir. 2002).

Absent statutory or equitable tolling, the federal limitations period expires one year after it begins to run. Statutory tolling applies when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Equitable tolling is an "extraordinary remedy" that "is typically applied sparingly" – when a petitioner establishes both "(1) diligence in his efforts to timely file a habeas petition and (2) extraordinary and unavoidable circumstances." <u>Arthur v. Allen</u>, 452 F.3d 1234, 1252 (11th Cir.), <u>modified on other grounds</u>, 459 F.3d 1310 (11th Cir. 2006). Moreover, the petitioner bears "the burden of establishing that equitable tolling [is] warranted." <u>Pugh</u>, 465 F.3d at 1300-01. A petitioner's contention that "he has

7

suffered from mental impairments his entire life. . . ., without more, is insufficient to justify equitable tolling." <u>Lawrence v. Florida</u>, 421 F.3d 1221, 1227 (11th Cir. 2005) (citing <u>Bilbrey v. Douglas</u>, 124 Fed. Appx. 971, 973 (6th Cir. 2005), for proposition "that equitable tolling did not apply because petitioner 'failed to establish a causal connection between her mental condition and her ability to file a timely petition'"), <u>aff'd</u>, 549 U.S. 327, 127 S. Ct. 1079 (2007).

Finally, even if the limitations period has expired, a petitioner's "actual innocence" may lift the time bar that otherwise would prevent consideration of his federal habeas claims. <u>See</u> <u>United States v. Montano</u>, 398 F.3d 1276, 1284 (11th Cir. 2005). To demonstrate actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial," <u>Schlup v. Delo</u>, 513 U.S. 298, 324, 115 S. Ct. 851, 865 (1995), thereby showing "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence," <u>id.</u> at 327, 115 S. Ct. at 867.

### B. Whether Petitioner is Entitled to Statutory Tolling During Pendency of His Application for Certificate of Probable Cause

As noted above, the state habeas court denied Petitioner's habeas petition on April 19, 2006 (1st Am. Pet. ¶ 8), leaving Petitioner until May 19, 2006, to file a

8

timely notice of appeal in that court and a timely CPC application in the Georgia Supreme Court, see O.C.G.A. § 9-14-52(b).  Petitioner argues that the Georgia Supreme Court erred when it dismissed his habeas appeal as untimely.  (Suppl. Resp. [26] at 2.)  Documents that Petitioner attached to his response reveal the following.  (See also id. at 3-7.)  On May 9, 2006, a law clerk for the Gwinnett County Superior Court judge who denied Petitioner's state habeas petition returned to Petitioner the copy of his CPC application that he had mailed to the judge, dated and notarized on April 26, 2006, "so that [he might] follow the appropriate procedure for filing an appeal in a habeas corpus case." (Id. Ex. 1 at 92-94 [Doc. 26-3 at 51-53].)  Petitioner then filed a notice of appeal with the clerk of the Gwinnett County Superior Court, executed on May 19, 2006, and file-stamped on May 26, 2006.  (Id. at 1 [Doc. 26-2 at 5].)  On that same day, the clerk notified Petitioner that his notice of appeal "can not be processed because it was improperly filed" due to the lack of "a proper certificate of service."  (Id. at 95 [Doc. 26-3 at 54].)  Petitioner then filed a second notice of appeal, accompanied by a certificate of service dated May 31, 2006, which was file-stamped on June 2, 2006.  (Id. at 2-3 [Doc. 26-2 at 6-7].)  On June 6, 2006, the clerk once again notified Petitioner that his notice of appeal "can not be processed because it was improperly filed" due to the lack of "a proper certificate of service."

9

(Id. at 96 [Doc. 26-3 at 55].)   The Gwinnett County Superior Court ultimately accepted Petitioner's notice of appeal, deeming it filed on July 11, 2006.  (See id. at 97-98 [Doc. 26-3 at 56-57].)   On November 6, 2006, the Georgia Supreme Court, without specifically addressing the timeliness of Petitioner's CPC application in that court, dismissed his "application" because his notice of appeal "was not stamped filed in the habeas court until May 26, 2006, making it untimely."   (Id. [Doc. 26-2 at 19].)

Petitioner argues that the Georgia Supreme Court erred in dismissing his habeas appeal as untimely because, under Georgia's mailbox rule, a CPC application and notice of appeal from the denial of a habeas corpus petition are deemed filed when submitted to prison officials for mailing, not when file stamped in the receiving courts.  (Suppl. Resp. [26] at 7-8.)   Therefore, Petitioner argues, statutory tolling applies to the period from April 19, 2006, when the state habeas court denied his petition, until November 6, 2006, when the Georgia Supreme Court erroneously dismissed his application to appeal that denial.  (Id.)

In the renewed motion to dismiss, Respondent argues that Petitioner's contention that the Georgia Supreme Court misapplied its own mailbox rule "ignores the rule that the federal courts 'are bound by the state court's determination that the

10

appeal was untimely.'" (Br. Supp. Renewed Mot. Dismiss [32-2] at 12 (quoting Stafford v. Thompson, 328 F.3d 1302, 1305 (11th Cir. 2003)) (emphasis omitted).) Therefore, Respondent argues, Petitioner's state habeas petition tolled the federal limitations period only until May 19, 2006, when the time expired for Petitioner to submit both a properly filed CPC application in the Georgia Supreme Court and a properly filed notice of appeal in the state habeas court that denied his habeas petition. (Id. at 17.) Respondent asserts that the Georgia Supreme Court's determination that Petitioner's notice of appeal was untimely is entitled to deference from this Court, and that, "[e]ven if the Court were authorized to evaluate questions of Georgia law, and were not bound by the state court's determination, under state law, that Petitioner's CPC application was untimely filed, the Georgia Supreme Court did not 'misapply' its own mailbox rule." (Id. at 13.) Respondent argues that Petitioner, merely by dating his notice of appeal May 19, 2006, is not entitled to a presumption that he timely delivered his notice of appeal to prison officials for mailing under Georgia's mailbox rule, whose "mechanics" the Georgia Supreme Court may decide for itself. (Id. at 14-15.) Respondent also notes that Petitioner's timely sending a copy of his CPC application to the state habeas judge, rather than a notice of appeal to the clerk of the state habeas court, did not satisfy Georgia's

11

filing requirements for appealing the denial of his state habeas petition, and, therefore, "did not constitute a 'properly filed' appeal of the denial of state habeas corpus relief" sufficient to toll the federal limitations period.  (Id. at 15-17.)

Petitioner responds that, despite the deference due to a state court's determination that a pleading was untimely filed, a federal district court is required to review the rule used to make that determination to ascertain whether it is "firmly established and regularly followed."  (Petr.'s Resp. [33] at 4 (citing Webster v. Moore, 199 F.3d 1256 (11th Cir. 2000)).)  Petitioner asserts that the Eleventh Circuit has concluded that the Georgia Supreme Court "does not have a firmly established and regularly followed rule for those applicants who filed a timely CPC application but an untimely notice of appeal," as the Georgia Supreme Court apparently determined in his case.  (Id. at 5 (citing Wade, 379 F.3d 1254).)  Petitioner argues that the Georgia Supreme Court erred in dismissing his habeas appeal as untimely because he "has conclusively demonstrated that he timely filed his CPC application with the Supreme Court of Georgia."  (Id. at 6.)  He argues further that he "did indeed timely file his notice of appeal with the state habeas court," and notes that "nothing in the record or in the Respondent's brief rebuts his sworn statement that he delivered his materials to the prison officials for mailing by May 19, 2006."  (Id.)

12

In reply, Respondent argues that <u>Wade</u> does not stand for the proposition that Georgia does not have a firmly established rule regarding a timely notice of appeal in state habeas cases; in fact, the Eleventh Circuit in <u>Wade</u> stated in a footnote that because the petitioner's CPC application was untimely, it "need not discuss [his] untimely notice of appeal further." (Resp.'s Reply [34] at 2-3.) Respondent argues that "the Georgia Supreme Court made clear in <u>Fullwood v. Sivley</u>, 271 Ga. 248, 250, 517 S.E.2d 511 (1999), [that] <u>both</u> requirements of O.C.G.A. § 9-15-52(b) – i.e., that a habeas petitioner file, within 30 days, both a notice of appeal in the superior court and a CPC application in the Georgia Supreme Court, are jurisdictional." (Resp.'s Reply at 3.)

As noted above, a properly filed application for state post-conviction relief warrants statutory tolling of the federal limitations period during the pendency of that application. 28 U.S.C. § 2244(d)(2). Under Georgia law, to appeal the denial of a state habeas petition, the "unsuccessful petitioner . . . must file a written application for a certificate of probable cause to appeal with the clerk of the Supreme Court within 30 days from the entry of the order denying him relief," and he "shall also file within the same period a notice of appeal with the clerk of the concerned superior court." O.C.G.A. § 9-14-52(b). "[C]ompliance with [these] requirement is

13

jurisdictional." <u>Fullwood</u>, 517 S.E.2d at 514. However, "before a habeas appeal will be treated as being subject to dismissal for procedural irregularities, it must be established that the petitioner was informed of the proper appellate procedure." <u>Capote v. Ray</u>, 577 S.E.2d 755, 757 (Ga. 2002).

Moreover, the Georgia Supreme Court has adopted the "mailbox rule" for the filing of a CPC application and notice of appeal in a state habeas case: "when a prisoner, who is proceeding pro se, appeals from a decision on his habeas corpus petition, his application for certificate of probable cause to appeal and notice of appeal will be deemed filed on the date he delivers them to the prison authorities for forwarding to the clerks of this Court and the superior court, respectively." <u>Massaline v. Williams</u>, 554 S.E.2d 720, 722-23 (Ga. 2001) (stating that "a pro se prisoner may prove the timeliness of his filing in, at least, the following ways: (a) an official United States Postal Service post-mark showing a date before the deadline will be conclusive; (b) the date on the certificate of service will give rise to a rebuttable presumption that the prisoner handed his filing to the prison officials on that date; or (c) an affidavit reflecting the date and the fact the prisoner provided his legal filing with sufficient prepaid postage for first-class mail will give rise to a rebuttable presumption").

14

Ordinarily, as stated in Wade, the Eleventh Circuit "give[s] 'due deference' to the Georgia Supreme Court's determination that [a] CPC application failed to comply with O.C.G.A. § 9-14-52(b)." Wade, 379 F.3d at 1262. The Wade court noted, however, the caveat set forth in Webster, 199 F.3d at 1259 n.4, whence the "due deference" language derives, that, under the proper circumstances, the Eleventh Circuit might have "occasion to consider whether the state court would be due deference if the rule applied was not 'firmly established and regularly followed.'" Wade, 379 F.3d at 1260. See Neal v. Sec'y, Dep't of Corr., 271 F. App'x 893, 895 (11th Cir. 2008) (suggesting that federal court does not owe due deference to state court's determination regarding timeliness of state post-conviction pleading if federal petitioner "demonstrate[s] either that the state court's finding of fact was erroneous or that its application of the state's procedural rule was not firmly established and regularly followed"); Colbert v. Head, 146 F. App'x 340, 344 (11th Cir. 2005) (noting that court in Siebert v. Campbell, 334 F.3d 1018, 1025-29 (11th Cir. 2003), concluded that "state rule . . . not 'firmly established and regularly followed' at the time of the petitioner's state habeas filing . . . should not be given deference").

It is undisputed that Petitioner filed his CPC application in the Georgia Supreme Court before the thirty-day time limit for doing so expired on May 19,

2006. The only dispute here concerns the timeliness of Petitioner's notice of appeal

in the state habeas court. The Georgia Supreme Court noted that Petitioner's notice

of appeal was file-stamped in the state habeas court on May 26, 2006, seven days

after the deadline of May 19, 2006, and, for that reason, dismissed his habeas appeal

as untimely. It is also undisputed, however, that Petitioner dated his notice of appeal

as having been executed on May 19, 2006. The undersigned construes the date on

that document as establishing a rebuttable presumption that Petitioner submitted it

to prison officials for mailing on that date. See Massaline, 554 S.E.2d at 722-23

(noting that, under Georgia's mailbox rule, one method in non-exhaustive list of

ways to establish rebuttable presumption of mailing date of pleading is via date on

certificate of service attached to that pleading). Respondent has offered no evidence

to rebut that presumption.[2] It appears, then, that the Georgia Supreme Court failed

to apply its own mailbox rule to Petitioner's notice of appeal, and, therefore, did not

conform to "firmly established and regularly followed" practice in Georgia. For that

---

[2] To the extent that Respondent might argue that Petitioner's failure to include a certificate of service on his May 19, 2006 notice of appeal establishes that the notice was not properly filed within the time limitation of O.C.G.A. § 9-14-52(b), the undersigned notes that neither the statute nor the state habeas court's instructions to Petitioner for filing an appeal includes a requirement that the notice of appeal be accompanied by a certificate of service. (See Petr.'s Suppl. Resp. Ex 1 at 65 [Doc. 26-3 at 25].)

reason, the undersigned concludes that the Georgia Supreme Court's determination in this regard is due no deference from this Court. Accordingly, based on the date on Petitioner's first notice of appeal, May 19, 2006, the undersigned concludes that the notice was "properly filed" under 28 U.S.C. § 2244(d)(2); and that, therefore, Petitioner's appeal from the denial of his state habeas petition was timely, his state habeas petition was pending in state court until November 6, 2006, and he is entitled to statutory tolling until that date, rather than until only May 19, 2006.

**C.    Whether Petitioner's Second Resentencing Has Any Effect on the Federal Limitations Period**

It is undisputed that on March 26, 2003, Petitioner's twenty-year sentences for rape and aggravated sodomy were changed to life without parole under the authority of O.C.G.A. § 17-10-7. (1st Am. Pet. ¶ 4.) However, the first resentencing order indicated that Petitioner received a life sentence for rape under O.C.G.A. § 17-10-7, without specifying which subsection applied, and that he received a life sentence for aggravated sodomy under O.C.G.A. § 17-10-6.1. (Respt.'s Ex. 7 [Doc. 7-6 at 8].) In his state habeas petition, Petitioner argued that those life sentences were unauthorized because he never before had been convicted of a serious violent felony. (Petr.'s Suppl. Resp. Ex 1 at 60-61 [Doc. 26-3 at 20-21].) The state habeas court

17

noted that although a life sentence under § 17-10-7(b)(2) requires proof of a prior conviction for a serious violent felony, "Petitioner was not sentenced under this provision. Neither the State's Motion to Correct Sentence nor the transcript of the hearing on said motion reflect any argument advanced or consideration given by the court to sentencing Petitioner under any sentencing provision for 'serious violent felonies.'" (Id. at 61 [Doc. 26-3 at 21].)

The habeas court noted that Petitioner's life sentences were authorized under §§ 17-10-7(a) & (c), that "Petitioner's sentence reflects that life without parole on count I (rape) was imposed pursuant to O.C.G.A. Sec. 17-10-7," but that "a clerical error" had occurred in recording Petitioner's sentence for aggravated sodomy, which is designated as authorized under § 17-10-6.1 rather than under § 17-10-7. Accordingly, the state habeas court remanded Petitioner's case to the trial court "for the limited purpose of correcting the aforementioned clerical errors in Petitioner's sentence," and "direct[ed] that [his] sentences for life without parole . . . be designated as being imposed pursuant to O.C.G.A. Sec. 17-10-7 (a) and (c)." (Id. at 62-63 [Doc. 26-3 at 22-23].) On June 28, 2006, the Superior Court of Murray County, in the presence of Petitioner, entered a new sentencing decree for Petitioner,

guided by the instructions from the state habeas court, and advised Petitioner of his right to sentence review, which, apparently, Petitioner did not pursue.  (Id. Exs. 3-4.)

Petitioner argues that, under current Eleventh Circuit case law, his convictions became final only when he was resentenced on June 28, 2006, and that because his state habeas petition was pending until November 6, 2006, his federal habeas petition, which he filed on October 23, 2007, within one year thereafter, is timely. (Suppl. Resp. [26] at 9-11.)   In the alternative, Petitioner argues that his second resentencing supports his equitable tolling argument because "a pro se petitioner – particularly one with Mr. Lewis's severe mental health problems – might understandably conclude that he had one year from th[e] date of that remand to file his habeas petition."  (Id. at 12.)  Respondent's only response to this argument is that "[i]t deserves none" because "Petitioner was not 'resentenced' so as to restart the limitations period."  (Respt.'s Reply [34] at 7.)

Under 28 U.S.C. § 2244(d)(1)(A), the federal limitations period begins to run when a petitioner's convictions and sentences become final by the completion of the direct appeal process – via a dispositive non-appealable order or via the expiration of the time for further appeal.   When a petitioner has been resentenced, the limitations period "begins to run from the date both the conviction and the sentence

19

the petitioner is serving at the time he files his application become final because judgment is based on both the conviction and the sentence." Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286, 1293 (11th Cir. 2007), cert. denied, 129 S. Ct. 1033 (2009). Under Georgia law, however, a mere technical correction in a defendant's sentence, i.e., "[a] nunc pro tunc entry[,] does not extend the statutory period for filing a notice of appeal." In re H.L.W., 535 S.E.2d 834, 835 (Ga. Ct. App. 2000).

> [T]he purpose of a [nunc pro tunc entry] is to record some previously unrecorded action actually taken or judgment actually rendered. . . . A nunc pro tunc entry is an entry made now of something actually previously done to have effect of former date; [the function] being not to supply omitted action, but to supply omission in [the] record of action really had but omitted through inadvertence or mistake. The general rule is that nunc pro tunc entries are proper to correct clerical errors but not judicial errors.

Id. at 835-36 (footnotes and internal quotations omitted). See also Cypress Barn, Inc. v. Western Elec. Co., 812 F.2d 1363, 1364 (11th Cir. 1987) (stating that a "nunc pro tunc order merely recites court actions previously taken but not properly or adequately recorded"). On the other hand, when an order includes findings not "made or expressed previously by the trial court. . . .[,] the effective date of the appealable order [is] the date of the revised order." In re H.L.W., 535 S.E.2d at 836.

Here, as the state habeas court made clear in its remand order, the correction to Petitioner's sentencing decree was technical in nature, recording "court actions previously taken but not properly or adequately recorded" regarding the statutory basis for Petitioner's life sentences. <u>See</u> <u>Cypress Barn, Inc.</u>, 812 F.2d at 1364. Therefore, Petitioner's non-appealable second resentencing decree had no effect on the finality of his convictions and sentences for direct appeal purposes and, hence, no effect on the running of the federal statute of limitations. As set forth more fully below, Petitioner's convictions and sentences became final in March 2005, when the time expired for him to seek certiorari review in the Georgia Supreme Court. The June 2006 technical corrections to his sentencing decree did not affect the finality of his convictions and sentences because, as corrections of "clerical errors," they did not extend the statutory period in Georgia for filing a notice of appeal. <u>See</u> <u>Ferreira</u>, 494 F.3d at 1293; <u>In re H.L.W.</u>, 535 S.E.2d at 836.

> **D.** **Whether Petitioner Is Entitled to Statutory Tolling During the Ninety Day Window for Filing, on Direct Appeal, a Petition for Certiorari in the United States Supreme Court**

The Georgia Court of Appeals affirmed Petitioner's convictions and sentences on February 22, 2005. Petitioner argues that his convictions did not become final ten days thereafter, when the time expired for him to seek certiorari review in the

21

Georgia Supreme Court, but rather ninety days thereafter, when the time expired for him to seek certiorari review in the United States Supreme Court. (Suppl. Resp. [26] at 12-17.) Petitioner argues that the Georgia Court of Appeals "was the court of last resort for his direct appeal, . . . [which] raised the single issue of sufficiency of the evidence, . . . a claim that the Supreme Court of Georgia's own rules indicate that it will not hear." (Id. at 14.) Petitioner relies upon Ga. Sup. Ct. R. 40, which he asserts was enacted six weeks before the Georgia Court of Appeals ruled on his appeal, and which provides that "a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error." (Id. at 15.) Petitioner notes that Rule 40 specifically discourages petitions for certiorari "to review the sufficiency of the evidence," the only claim he raised on direct appeal. (Id.) Accordingly, Petitioner argues, the limitations period for his federal habeas petition began to run on May 23, 2005, ninety days after the Georgia Court of Appeals ruled on his direct appeal. Thereafter, he argues, only fourteen days of the limitations period ran untolled before he filed his state habeas petition on June 6, 2005. Finally, Petitioner argues, adding those 14 days to the 351 days that ran from the dismissal of his CPC application on November 6, 2006, to the filing of

22

his federal habeas petition on October 23, 2007, renders his federal petition timely filed on the last day for doing so.  (Id. at 16-17.)

In the renewed motion to dismiss, Respondent asserts that, as noted above, Petitioner's convictions and sentences became final on March 4, 2005, when he failed to either seek reconsideration of the Georgia Court of Appeals' decision denying him relief on direct appeal or file a petition for certiorari in the Georgia Supreme Court.  (Br. Supp. Renewed Mot. Dismiss [32-2] at 6-8.)  Respondent argues that  the Georgia Supreme Court is the court of last resort on direct appeal in Georgia, and that because "Petitioner did not seek review in the Georgia Supreme Court, the 90-day period for filing a certiorari petition in the United States Supreme Court was never triggered."  (Id. at 9.)  Respondent asserts that Petitioner has confused "finality" with "exhaustion," which "are different concepts," and that Petitioner's argument would have merit only if the Georgia Supreme Court had lacked jurisdiction to consider a certiorari petition from Petitioner on direct appeal, which it did not.  (Id. at 9-11.)

Petitioner responds by acknowledging that in Nelson v. Schofeld, 371 F.3d 768 (11th Cir. 2004), the Eleventh Circuit ruled that exhaustion of state court remedies on direct appeal in Georgia requires a litigant to seek discretionary review

23

in the Georgia Supreme Court. Petitioner argues, however, that in response to the <u>Nelson</u> ruling, the Georgia Supreme Court changed its Rule 40 "for the express purpose of deterring appellants from petitioning for certiorari." (Petr.'s Resp. [33] at 9-10.) Petitioner asserts that the Eleventh Circuit ruled in <u>Hills v. Washington</u>, 441 F.3d 1374 (11th Cir. 2006), that the change in Rule 40 requires the federal courts to consider the merits of claims that a habeas petitioner raised on direct appeal in the Georgia Court of Appeals, but not in a certiorari petition in the Georgia Supreme Court, when Georgia affirmatively waives the exhaustion requirement in federal habeas proceedings with respect to such claims. (Petr.'s Resp. at 11-12.) Petitioner argues "that the Supreme Court of Georgia, through its efforts to make itself unavailable to him on direct appeal, has forsaken its jurisdiction over his case and rendered the Court of Appeals his court of last resort." (<u>Id.</u> at 14.) In effect, Petitioner argues that the only way that the Georgia Supreme Court could, and did, make a certiorari petition for discretionary review <u>unnecessary</u> to satisfy the federal exhaustion requirement in habeas cases was by making certiorari review <u>unavailable</u> to defendants who have been denied relief in the Georgia Court of Appeals. Therefore, Petitioner argues, he was entitled to file a petition for certiorari review in the United States Supreme Court directly from the denial of his appeal by the

Georgia Court of Appeals, and he is entitled to the exclusion of the ninety-day window for doing so from the running of the limitations period. (Id. at 14-19.) Respondent replies that Judge Carnes, in his concurrence in Hills, states that Rule 40 "does not purport to change in any way the scope of the certiorari procedure available to defendants on direct appeal in" Georgia. (Respt.'s Reply [34] at 6 (quoting Hills, 441 F.3d at 1378, Carnes, J., concurring).)

Although there has been significant disagreement between the parties on this issue, the bottom line is quite simple. Well after the Georgia Supreme Court issued its revised Rule 40, the Eleventh Circuit held, in September 2006, "that the court of last resort in Georgia is its supreme court" and that, "[a]lthough the Georgia Constitution circumscribes review by the state supreme court and vests the remainder of appellate jurisdiction in the court of appeals," there is "no limit on [the Georgia Supreme Court's] certiorari jurisdiction." Pugh, 465 F.3d at 1300. Therefore, "[t]he Supreme Court of Georgia was the highest court in the state in which a decision on direct review of [petitioner's] conviction could have been had." Id. (concluding that because petitioner failed to seek certiorari review in Georgia Supreme Court after Georgia Court of Appeals affirmed his conviction and sentence, he "was not entitled to petition the Supreme Court of the United States for a writ of certiorari and was not

25

entitled to the 90-day period for filing that petition"). Accordingly, Petitioner's

arguments here about the effect of Ga. Sup. Ct. R. 40 – which was intended to settle

issues concerning the exhaustion of state court remedies and the procedural default

that may arise from a federal habeas petitioner's failure to exhaust those remedies –

are unavailing. Petitioner's convictions and sentences became final on March 4,

2005, when the time expired for him to seek certiorari review in the Georgia Supreme

Court on direct appeal.[3]

### E.     Whether Petitioner's Mental Condition Entitles Him to Equitable Tolling

Petitioner argues next that, if his federal habeas petition is not timely, based

on statutory tolling, he is entitled to equitable tolling of the federal limitations period

due to his mental infirmities. Petitioner relies upon a letter mailed by Dr. William

Schneider, M.D., to Petitioner's attorney on May 6, 2009. Dr. Schneider was

---

[3] Based on the foregoing, the undersigned recalculates the running of the federal limitations period as follows: (1) the limitations period ran untolled for ninety-three days between March 4, 2005, when Petitioner's convictions and sentences became final on direct appeal, and June 6, 2005, when he executed and submitted his state habeas petition; (2) the limitations period was tolled thereafter until November 6, 2006, when the Georgia Supreme Court dismissed Petitioner's CPC application as untimely; and (3) the limitations period ran thereafter untolled for two hundred and seventy-two days, for a total of three hundred and sixty-five days, and expired on August 5, 2007, seventy-nine days before Petitioner filed his federal habeas petition on October 23, 2007.

AO 72A
(Rev.8/82)

Petitioner's treating psychiatrist at Phillips State Prison from March 2004 until September 2008. (Suppl. Resp. [26] at 17-28; <u>see</u> <u>id.</u> Ex. 5 at 1 [Doc. 26-7 at 2].) In preparing the letter, Dr. Schneider reviewed several sources of detailed information about Petitioner's mental condition, with particular attention to the time period from May 19, 2006, through October 23, 2007. (Suppl. Resp. Ex. 5 at 1-2 [Doc. 26-7 at 2-3].)

Dr. Schneider reached the following conclusions: (1) Petitioner "is severely and chronically mentally ill," and during the relevant time period, "[h]e never stabilized, and was never able to carry out more than the basic tasks of daily living"; (2) Petitioner "had many different symptoms of many different disorders, which reflects upon the severe nature of his illness"; (3) Petitioner's symptoms included "hallucinations, paranoia, disorganized thought processes, . . . depression, suicidal ideation, suicide attempts, chronic self-mutilation (by cutting himself), anxiety, panic attacks, inability to concentrate or focus, . . . and acute agitation"; (4) although Dr. Schneider treated Petitioner aggressively with "multiple medications from different medication classes at high doses," they did not lead "to any significant amelioration of his symptoms or improve[] his functioning"; (5)-(6) during the relevant time period, Petitioner was admitted to the mental health Crisis Stabilization Unit (CSU)

27

in 2006 on June 29 (paranoid thoughts and threats) and July 17 (self-lacerations, suicidal thoughts, auditory hallucinations, and disorganized thought processes), and in 2007 on March 13 (overdose, suicide attempt), June 18 (manic behavior), August 15 (overdose), September 19 (acute agitation and uncontrollable behavior), and October 22 (self-laceration), and he was admitted to the Acute Care Unit (ACU) on July 20, 2006, due to continued instability after his CSU admission on July 17, 2006, for "a total of approximately thirty two days during the relevant time period," when, due to the restrictive nature of the units, Petitioner "was physically unable to work on legal matters," and he was "locked down in less restrictive units for approximately fifty-five days" during this same time period; and (7) although Petitioner "openly admitted that he frequently was using illicit drugs in prison, where they are easy to obtain. . . .[,] he has a severe mental illness in addition to his drug use," as demonstrated by the continuation of his symptoms while in lockdown, where he lacked access to drugs, and by the rapid worsening of his symptoms during "episodic periods of non-compliance with his medications" (although "there were few episodes of complete non-compliance, and in general his compliance [with his medications] was fairly good"). (Suppl. Resp. Ex. 5 at 2-4 [Doc. 26-7 at 3-5].)

28

In summary, Dr. Schneider concluded that Petitioner "is severely mentally ill," noting that "[d]uring the entire four years [Dr. Schneider] treated him . . ., he never stabilized and continued to suffer from multiple symptoms, often many at the same time, despite intensive treatment." Dr. Schneider opined that Petitioner's "severe chronic mental illness made him far too symptomatic and unstable to successfully accomplish any complicated task, particularly one as complex as filing a legal brief." (Id. at 4-5 [Doc. 26-7 at 5-6].) Petitioner asserts that Dr. Schneider's report establishes the requisite causal connection between his mental condition and his inability to file a timely federal habeas petition. (Suppl. Resp. at 27-28.)

In the renewed motion to dismiss, Respondent first asserts that Petitioner's "resentencing" – to the extent Petitioner contends he was confused about the start of the limitations period based on the remand from the state habeas court – lends no support to his equitable tolling argument because a miscalculation of the limitations period is not an extraordinary circumstance that warrants equitable tolling. (Br. Supp. Renewed Mot. Dismiss [32-2] at 19.) Respondent next argues that "Petitioner has not established . . . a causal connection" between his mental illness and his

untimely federal habeas petition.[4] (Id. at 20.) In essence, Respondent argues that Dr. Schneider's letter proves too much, for if Petitioner was, as Dr. Schneider opines, too mentally ill from March 2004 to September 2008 to accomplish any complicated task, such as filing a legal brief, Petitioner cannot explain how he "was able to file rational and appropriate pleadings, specifically, the original petition and supporting brief" in this case, without explaining "the change in circumstances that allowed him to do this despite his allegedly being unable to do so previously" – and Petitioner has failed to offer any such explanation. (Id. at 21.) "Petitioner's current contentions that he was unable to adequately interact with the legal system until he filed his federal petition are belied by the course of proceedings in this case, especially since Petitioner demonstrated his ability to file [] appropriate pleadings in both state and federal court." (Id. at 22.) Respondent also argues that "Dr. Schneider's letter is rife with contradictory information," such as the assessment that Petitioner's medications did not significantly improve his symptoms and functioning, coupled with the assessment that Petitioner's symptoms rapidly worsened when he failed to comply with his medication regimen. (Id. at 22-23.)

---

[4] Respondent also objects, under Rule 7 of the Rules Governing Section 2254 Cases, to the admission of Dr. Schneider's unauthenticated letter. (Br. Supp. Renewed Mot. Dismiss at 20.)

In response, Petitioner asserts that Respondent failed to address his equitable tolling argument regarding his second resentencing, inasmuch as Petitioner "might have been" misled by the resentencing into miscalculating his federal limitations period. (Petr.'s Resp. [33] at 19.) While offering to provide "additional authentication" of Dr. Schneider's report, upon request from this Court, Petitioner takes exception to Respondent's contention that his prior post-conviction pleadings in state and federal court belie his claim that he was incapable of submitting a timely federal habeas petition due to his mental illness. Petitioner contends that "Respondent's error is premised upon [the] assumption that [Petitioner] prepared his original federal habeas petition and supporting brief and the underlying state habeas pleadings without assistance. As [Petitioner] stated in his state habeas hearing and in these proceedings, he has depended throughout his postconviction appeals on the assistance of his fellow prisoners to prepare his legal pleadings." (Id. at 21-24 & n.8.)

In reply, Respondent argues that Petitioner's "allegation that he has always been so mentally ill that he could not prosecute his collateral attacks on his convictions is belied by the record, and Petitioner clearly overstates his alleged difficulties." (Respt.'s Reply [34] at 9.) Noting that at Petitioner's state habeas

31

hearing, "he presented several exhibits, was able to subpoena his mental health records and tender them, cross-examined his former counsel three times, testified himself, and was told by the judge that he had done a 'fine' job in presenting his case," Respondent contends that Petitioner's reliance on fellow prisoners to help him file his prior pleadings and briefs "is insufficient to entitle him to equitable tolling," as is his alleged illiteracy.[5] (Id. at 10-12.) Respondent reiterates the contention that "[b]ecause the record clearly shows that Petitioner was able, despite his allegedly severe and chronic mental illness to prepare and prosecute both his state and federal habeas actions, it is incumbent upon Petitioner to explain what purported change in his condition allegedly prevented him from timely filing his federal petition," but "Petitioner readily concedes that he does not allege such a change." (Id. at 12-13 (citing Petr.'s Resp. [33] at 23, stating that Petitioner "has alleged no change in his circumstances; his severe and chronic mental illness precedes the commencement of the legal proceedings against him and has plagued him throughout these and his state habeas proceedings").) Respondent also contends that lockdowns and other restrictions on access to legal materials do not warrant equitable tolling. (Id. at 14.)

---

[5] Petitioner claims in his Motion for Reconsideration that he "is illiterate." (Doc. 15 at 2 (cited in Petr.'s Resp. [33] at 23-24 n.8).)

Finally, Respondent argues that Petitioner has offered "absolutely no evidence of diligence" in pursuit of his federal habeas remedy. (Id. at 15.)

The undersigned is not aware of any case in which the Eleventh Circuit has allowed equitable tolling based on a habeas petitioner's mental infirmities, and is aware of only one case in which a district court in this Circuit has done so. See Morrow v. Williams, No. 2:06-CV-7 (N.D. Ga. Mar. 23, 2007) (Order adopting Report and Recommendation to deny motion to dismiss federal habeas petition as time-barred due to petitioner's severe cognitive deficiencies). In Hunter v. Ferrell, 587 F.3d 1304, 1310 (11th Cir. 2009), however, the Eleventh Circuit vacated a time-bar dismissal of a 28 U.S.C. § 2254 petition and remanded the case to the district court "for further investigation and factual development" regarding whether the petitioner's severe mental impairments entitled him to equitable tolling that would render his 2008 habeas petition timely. The Eleventh Circuit noted a doctor's 1997 pretrial competency report showing that the petitioner "is at the low-end of the mildly retarded range"; that "his mental retardation moderately to severely impairs his judgment, insight and problem-solving skills, which makes him unable to function independently"; that "he is illiterate"; and that "he suffers from severe expressive speech aphasia which makes it difficult for him to communicate intelligibly." Id. at

1309. The Eleventh Circuit noted that the petitioner was able to file his three state post-conviction petitions "only with the help of others," and the 1997 competency report – that his "mental retardation is significant and irreversible" – "remains probative of [his] mental impairment as to the § 2254 petition during the limitations period and beyond to 2008. And, the state has offered no evidence in response to [petitioner's] averments that he is not able to manage his affairs, he is not able to understand his legal rights or act upon them and his mental retardation prevented him from timely filing a § 2254 petition." Id. The Eleventh Circuit concluded that the petitioner's "evidence, while not sufficient to establish definitively that the filing deadline should be equitably tolled (at all or for how long), is sufficient to raise a factual issue as to whether a causal connection exists between his mental impairment and his ability to file a timely § 2254 petition, precluding summary judgment." Id. at 1309-10.

As set forth in detail below, the undersigned finds the alleged impairments of the petitioner in Hunter much more severe than those of Petitioner here, alleged or otherwise, which demands an outcome different from that in Hunter. The undersigned notes that, for the most part, the district courts in this Circuit have rejected equitable tolling arguments similar to those raised by Petitioner here. In

34

Moore v. Bryant, No. 8:06-CV-1365-T-30TBM, 2006 U.S. Dist. LEXIS 78768, at

*7 (M.D. Fla. Oct. 30, 2006), for example, the court stated that "[t]o be entitled to

equitable tolling on the basis of mental illness, a petitioner must show more than that

it is difficult for him to understand and act upon his legal rights; rather, he must show

that he was incapable of preparing and filing a federal habeas petition or

post-conviction motion any earlier than he did." Noting that during his period of

alleged incompetency, the petitioner "demonstrated that, proceeding pro se, he was

able to protect his legal rights in a civil rights case that took 4 years to bring to

fruition," (id. at *9), the Moore court found the following submission insufficient to

warrant equitable tolling:

> Petitioner was mentaly [sic] incompetent at time of plea [November
> 1990] and has no memory of the proceedings of the plea and sentence
> and did not discover the convictions and sentences until Jan. 1996.
> Petitioner then sought to challenge these convictions but mental
> incompetence interferred [sic] with Petitioner[']s ability to challenge
> these convictions and [he] is still having mental health problems. Over
> the past ten years[,] Petitioner has attempted suicide five times, been on
> three other medications for depression[,] [been] treated in mental health
> institutions while serving sentence in the Department of Corrections[,]
> and been under the care of [a] Department of Corrections psychiatrist.
> Petitioner has never been found competent by any court. Mental
> incompetence prevented Petitioner from timely filing this petition.

AO 72A
(Rev.8/82)

Id. at *6-7.  The court concluded that the petitioner's assertion that his delay in filing

his § 2254 petition was the result of mental incompetence failed "when considered

in light of [his] demonstrated ability to pursue civil and collateral relief pro se during

the relevant period."  Id. at *11.

In Johnson v. Sec'y, Dep't of Corr., No. 6:07-cv-823-Orl-31DAB, 2008 U.S.

Dist. LEXIS 32159, at *10-11 (M.D. Fla. Apr. 18, 2008), the court rejected the

petitioner's claim that his history of mental illness prevented him from filing a timely

federal habeas petition because he "filed numerous state collateral proceedings

during the one-year limitation despite his alleged history of mental illness.  Thus, he

has not shown that his illness prevented him from timely filing the instant habeas

petition."  Likewise, in Murphy v. Hall, No. CV 109-043, 2009 U.S. Dist. LEXIS

47328, at *2-3 (S.D. Ga. June 4, 2009), the court stated as follows:

> Here, Petitioner has provided documentation showing that he has been
> diagnosed with schizoaffective disorder.  (Doc. no. 8, p. 7).  However,
> the Court is not persuaded that his mental illness was the cause of his
> untimely filing.  Indeed, Petitioner's diagnosis in 2004 predates his
> filings in state court, yet he still managed to discern how to proceed
> through the state system.  Moreover, it is difficult to see how
> Petitioner's mental illness did not affect his ability to present
> substantive arguments to this Court, yet somehow affected his ability to
> timely file his federal habeas petition.  Thus, the Court finds that
> Petitioner's mental incapacity does not qualify as an extraordinary
> circumstance entitling him to equitable tolling.

36

The court also noted that the petitioner had "not established that he acted with due diligence." Id. at *3.

Here, although Petitioner alleges that he prepared his previous pleadings only with the help of his fellow inmates, like the petitioner in Hunter, there is no evidence that Petitioner is borderline or mildly retarded, like the petitioner in Hunter; there is no evidence that Petitioner's competency to stand trial was in doubt, as it was for the petitioner in Hunter; and there is no evidence that Petitioner is unable to function independently or is unable to communicate effectively due to a severe speech or other impediment, as is the petitioner in Hunter. See Hunter, 587 F.3d at 1309.[6] In fact, the undersigned briefly addressed the matter of Petitioner's competency to stand trial in the original Report and Recommendation, noting that the state habeas court made the following findings regarding trial counsel's alleged ineffectiveness for failing to investigate Petitioner's mental health status:

> Counsel testified that Petitioner never advised him that he suffered from mental health problems or that he had ever been treated for mental health problems. During the course of his representation of Petitioner counsel stated that Petitioner's mental health was never an issue. Petitioner never said or did anything to suggest that he lacked criminal responsibility or that he was not competent. There was nothing in the

---

[6] Moreover, as discussed below, there is evidence that Petitioner is not illiterate, also unlike the petitioner in Hunter.

AO 72A
(Rev.8/82)

State's file to suggest Petitioner had a mental health history. Petitioner never appeared medicated or in need of medication. Counsel would have requested a psychological evaluation if he had felt that one was warranted, however nothing Petitioner ever said or did indicated such an evaluation was needed.

(R&R at 7; see Petr.'s Suppl. Resp. Ex. 1 at 54 [Doc. 26-3 at 14].) Moreover, Petitioner represented himself at his state habeas hearing, cross-examined his trial counsel, testified on his own behalf, made coherent arguments regarding the evidence used against him at trial, and read into the record portions of documents he had prepared for use at the hearing, conclusively demonstrating that he is not illiterate, as he has represented himself to this Court on two separate occasions, once *pro se* and once through his appointed counsel. (See Petr.'s Resp. [33] at 23-24 n.8 (claiming that Petitioner is illiterate); Respt.'s Ex. 7 [Doc. 7-3 at 44-76] (transcript of state habeas hearing, held on Nov. 17, 2005); id. Doc. 7-3 at 45-46, 48-49, & 61-62, where Petitioner reads portions of (a) a grievance he filed against his trial counsel, as well as counsel's response; (b) his own habeas corpus brief, while acknowledging that he is "reading from something"; and (c) O.C.G.A. §§ 17-10-7(a) and (b); id. Doc. 7-3 at 68, where Petitioner offers his own testimony that the alleged victim in his case "has a prior where she has said that somebody raped her before and

38

it became one of her hallucinations, and that's documented in the history, in the police report, where she has been raped before").

Without getting into the minutiae of Dr. Schneider's report, it appears that in November 2005, Petitioner was able to represent himself at his state habeas hearing, and to do so somewhat effectively, although, according to Dr. Schneider, he was in the grip of a mental illness so severe and chronic that he could perform no function more complicated than "the basic tasks of daily living," which illness persisted at least until Dr. Schneider's last contact with Petitioner in September 2008.[7] (See Doc.

---

[7] The undersigned takes note of Petitioner's argument in his First Amended Petition that his trial counsel provided ineffective assistance by not investigating his competency to stand trial, despite obvious signs of his mental instability, including the prescribed medications he reported at his arrest booking, his inappropriate courtroom behavior and use of profanity when addressing the court, and his hyperactivity (noted by trial counsel at the state habeas hearing, in a rather colloquial manner, as his fondness for talking, which counsel feared would open the door for damaging cross-examination if he testified at trial), as well as his well-documented history of mental illness. (See 1st Am. Pet. ¶¶ 48-52.) Petitioner also argues that he "cut a pitiable figure" at his state habeas hearing, so much so that his trial counsel at least twice testified that if Petitioner had exhibited such behavior prior to trial, he would have investigated Petitioner's mental health status before proceeding to trial. (Id. ¶¶ 53-56; see also ¶¶ 149-54.) The undersigned acknowledges that, as Petitioner has pointed out, he at times appeared confused, disoriented, and unable to maintain his train of thought at the state habeas hearing. In the undersigned's estimation, however, the totality of Petitioner's presentation was at least as effective as the presentations of many other state habeas petitioners who have not professed the slightest mental impairment. (See, e.g., Respt.'s Ex. 7 [Doc. 7-3 at 24-25], where Petitioner objected to trial counsel's testimony that he had visited Petitioner at the

26-7.)  The undersigned concludes that Petitioner was, at that time, and, based on the evidence before this Court, still is, able to function at a much higher level than the petitioner in <u>Hunter</u>.  In fact, Petitioner confirms that there has been no change in his mental condition that might explain why he was able to represent himself at his state habeas hearing on November 17, 2005, but was unable to understand the need to file a timely federal habeas petition by August 5, 2007, less than twenty-one months later.  (<u>See</u> Petr's Resp. [33] at 23.)  Moreover, it is clear that Petitioner is not illiterate, as he claims.  The undersigned finds that Petitioner's false claim of illiteracy, in conjunction with the other evidence before this Court, casts serious doubt upon his claim that his mental disabilities "rendered him incompetent to protect his legal rights" by filing a timely federal habeas petition in this Court.  <u>See</u> <u>Moore</u>, 2006 U.S. Dist. LEXIS 78768, at *11.  In this light, Petitioner's lockdown status – for thirty-two, or even seventy-seven, days over a period of eighteen months from May 19, 2006, through October 23, 2007 – does not warrant equitable tolling. <u>See</u> <u>Dodd v. United States</u>, 365 F.3d 1273, 1283 (11th Cir. 2004) (noting statement in <u>Akins v. United States</u>, 204 F.3d 1086, 1089-90 (11th Cir. 2000), "suggest[ing] that lockdowns and periods in which a prisoner is separated from his legal papers are

_____

Murray County Jail.)

not 'extraordinary circumstances' in which equitable tolling is appropriate").

Accordingly, the undersigned reports that Petitioner's mental impairments do not

warrant equitable tolling sufficient to render his federal habeas petition timely.

### F.     Whether the Actual Innocence Exception Applies Here

Finally, Petitioner contends that equitable tolling is warranted, or, in the

alternative, that the statute of limitations bar should not apply here because "he is

innocent of the crimes of rape and aggravated sodomy." He "respectfully submits

that with the benefit of discovery and further factual development of his claims[,] he

can make the threshold showing of innocence that would justify a review of his

underlying constitutional claims." (Suppl. Resp. [26] at 28, 30.) In the renewed

motion to dismiss, Respondent argues that discovery and a <u>Schlup</u> hearing are not

appropriate here because "Petitioner has failed to make a threshold showing of actual

innocence." (Br. Supp. Renewed Mot. Dismiss [32-2] at 25.) Petitioner responds

that because he "has been forced to represent himself with no assistance from a

lawyer in spite of his severe and chronic mental illness, he has not had the

opportunity to develop [the] evidence" to support his actual innocence argument. He

asks this Court to hear "the federal habeas petition of a prisoner who, in spite of his

severe and chronic mental illness, has diligently struggled to seek review of his

convictions and sentence of life imprisonment without parole – both obtained on the basis of insufficient evidence and violations of his constitutional rights," and "has pursued this lonely goal with the assistance of no one but a few of his fellow prisoners." (Petr.'s Resp. [33] at 24-25.)

As noted above, in order to take advantage of the actual innocence exception to the time bar, a federal habeas petitioner must present new reliable evidence of his innocence. See Schlup, 513 U.S. at 324, 327. However, despite the appointment of counsel on Petitioner's behalf more than one year ago, Petitioner has yet to produce any such evidence or even to suggest that any such evidence exists. (See generally 1st Am. Pet.) Accordingly, the undersigned reports that, to the extent that the actual innocence exception is available to overcome the time bar in federal habeas proceedings, the exception does not apply here.

## III.   CERTIFICATE OF APPEALABILITY

A state prisoner must obtain a certificate of appealability ("COA") before appealing the denial of his federal habeas petition. 28 U.S.C. § 2253(c)(1)(A). This Court "must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner. Rule 11(a) of the Rules Governing Section 2254 Cases (also providing that "[i]f the court denies a certificate, the parties may not

42

appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22").

A COA may issue only when the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v . McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04 (2000) (internal quotations omitted). For a COA to issue on a procedural issue, jurists of reason must find it debatable both "whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." Id. at 478, 120 S. Ct. at 1601.

Based on the foregoing, the undersigned considers it at least arguable among jurists of reason whether Petitioner's mental condition warrants equitable tolling of the federal statute of limitations. Accordingly, the undersigned **RECOMMENDS** that Petitioner be granted a certificate of appealability on the following issue only:

Are Petitioner's mental problems sufficiently serious to establish a causal connection between those problems and his failure to file a timely federal habeas petition in these proceedings, warranting the application of equitable tolling to render his federal habeas petition timely?

IV.    **CONCLUSION**

For the foregoing reasons, Petitioner's unopposed Motion to Expand the Record [27] is **GRANTED**, nunc pro tunc; and Respondent's Motion to Strike the Attachments to the Amendment [28] is **DENIED** as moot.

Further, **IT IS RECOMMENDED** that Respondent's Renewed Motion to Dismiss Petition as Untimely [32] be **GRANTED**; and this habeas corpus action be **DISMISSED** as time-barred.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO ORDERED AND RECOMMENDED** this 21st day of January, 2010.



WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PHILLIP MORRIS LEWIS, | :: | CIVIL ACTION NO. |
| Inmate # GDC 510782, EF 236089, | :: | 1:07-CV-2803-JEC-WEJ |
|       Petitioner, | :: | |
| | :: | |
|       v. | :: | |
| | :: | |
| SHEILA OUBRE, Warden, | :: | PRISONER HABEAS CORPUS |
|       Respondent. | :: | 28 U.S.C. § 2254 |

## ORDER FOR SERVICE OF
## FINAL REPORT AND RECOMMENDATION

Attached is the Report and Recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and this Court's Local Rules 72.1 and 58.1. Let the same be filed and a copy, with a copy of this order, be served upon counsel for the parties.

Each party may file written objections, if any, to the Report and Recommendation within fourteen (14) days of receipt of this Order. Fed. R. Civ. P. 72(b); Rule 8(b), Rules Governing Section 2254 Cases. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the

transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to plain error review. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED** this 21st day of January, 2010.


_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

2