IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PHILLIP MORRIS LEWIS, | :: | CIVIL ACTION NO. |
| Inmate # GDC 510782, EF 236089, | :: | 1:07-CV-2803-JEC-WEJ |
| Petitioner, | :: | |
| | :: | |
| v. | :: | |
| | :: | |
| SHEILA OUBRE, Warden, | :: | PRISONER HABEAS CORPUS |
| Respondent. | :: | 28 U.S.C. § 2254 |

## FINAL REPORT AND RECOMMENDATION

Now before the Court are Petitioner Phillip Lewis's habeas corpus petition [1], with his proposed amendments [25]; Respondent's Renewed Motion to Dismiss Petition as Untimely [32] and Post-Hearing Brief in Support [56]; Petitioner's Response in Opposition to Respondent's Motion to Dismiss [57]; and Respondent's Post-Hearing Reply Brief [58]. For the  reasons set forth below, the undersigned **RECOMMENDS** that Respondent's motion to dismiss the petition as untimely be **GRANTED** because Petitioner is not entitled to equitable tolling.

## I.    Background

By jury trial, Petitioner "was found guilty of rape, aggravated sodomy, aggravated assault, criminal trespass," and four lesser crimes. Lewis v. State, 611 S.E.2d 80, 81-82 (Ga. Ct. App. 2005) (footnotes omitted). Although Petitioner

originally received a twenty-year combined sentence, he was resentenced under Georgia's recidivist offender statute, O.C.G.A. § 17-10-7, to life imprisonment without parole for both rape and aggravated sodomy.  (First Am. Pet. [25] ¶¶ 2-4.) On February 22, 2005, the Georgia Court of Appeals affirmed Petitioner's judgment of conviction.  Lewis, 611 S.E.2d at 82.

On June 6, 2005, Petitioner executed a state habeas petition for submission to the Superior Court of Gwinnett County, which petition that court denied on April 19, 2006.  (First Am. Pet. ¶ 8.) Petitioner filed an application for a certificate of probable cause (CPC) to appeal that denial, which application the Georgia Supreme Court dismissed as untimely on November 6, 2006, because the court concluded that Petitioner had filed the application after the May 19, 2006, deadline for doing so. (Id. ¶ 9.)  Petitioner executed and filed his federal habeas petition on or about October 23, 2007.  (Id. ¶ 10.)

In the first Report and Recommendation in this case, the undersigned concluded that by the time Petitioner filed his federal habeas petition, the limitations period set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d), had expired.  Accordingly, the undersigned reported that, absent equitable tolling, the petition was untimely; concluded that

2

neither equitable tolling nor the actual innocence exception to the statute of limitations bar applied; and recommended granting Respondent's motion to dismiss the petition as untimely. (First Report and Recommendation ("R&R") [10].) The District Court adopted that recommendation (Order of Sept. 23, 2008 [14]), but upon reconsideration, ordered counsel appointed on Petitioner's behalf and allowed him to present additional evidence and argument regarding the timeliness issue (Order of Dec. 17, 2008 [17]), which Petitioner did (Suppl. Resp. on Issue of Equitable Tolling [26]; Mot. to Expand the Record [27]).

Respondent renewed her motion to dismiss the petition as untimely [32], and the undersigned recommended granting the motion (Second R&R [36]). However, the District Court declined to adopt that recommendation and, instead, ordered an evidentiary hearing (Order of Apr. 5, 2010 [42]),[1] which the undersigned conducted

---

[1] The District Court also directed the undersigned to consider Petitioner's argument that his second "resentencing" is relevant to equitable tolling because the state habeas court's remand to correct his sentence could have led him to conclude that he had one year from the resentencing to file his federal habeas petition. (See Order of Apr. 5, 2010 at 17.) Petitioner has not alleged that he actually drew that conclusion. Moreover, that remand was "for the limited purpose of correcting . . . clerical errors in Petitioner's sentence," with no indication that the finality of Petitioner's conviction was affected. (State Habeas Order [26-3] at 16.) The Murray County Superior Court entered an amended sentence [26-6] on June 28, 2006. Even if a new limitations period began on that date, Petitioner still would need equitable tolling for the period from on or about June 28, 2007, through the filing of his federal

3

on May 17, 2010 (Hr'g Tr. [55]).  As noted at the outset of the hearing, the sole issue before the Court at this time is whether Petitioner is entitled to equitable tolling for a sufficient number of days to render his federal habeas petition timely.  (Hr'g Tr. 3-4.)[2]

---

habeas petition on October 23, 2007.  This is true notwithstanding Petitioner's argument that the one-year period should run from November 6, 2006.  As set forth infra note 2, statutory tolling until that date was calculated assuming Petitioner's conviction became final on March 4, 2005.  If Petitioner's conviction did not become final until June 28, 2006, then no statutory tolling applies because he made no state filing that would toll the federal limitations period.  In sum, as noted infra note 2, the equitable tolling analysis is unaffected by any date disputes in this case.

[2] The relevant dates for the running of the one-year federal limitations period are as follows: (1) Petitioner's judgment of conviction became final on direct appeal on March 4, 2005; (2) the limitations period ran untolled until June 6 or 16, 2005 (see Order of Apr. 5, 2010 at nn.1-2 (noting "that June 6 date is now in doubt" following Georgia Supreme Court ruling in Roberts v. Cooper, 691 S.E.2d 875 (Ga. 2010))), when Petitioner's state habeas petition was docketed; (3) although still a matter of dispute, the undersigned has determined that the limitations period was statutorily tolled until November 6, 2006, when the Georgia Supreme Court dismissed as untimely Petitioner's CPC application to appeal the April 19, 2006, denial of his state habeas petition; and (4) the limitations period ran untolled thereafter until Petitioner filed his federal habeas petition on or about October 23, 2007, ninety days past AEDPA's one-year deadline.  In sum, Petitioner must justify equitable tolling for at least ninety days (assuming the state habeas petition was filed June 6, 2005, otherwise 100 days).  However, both parties agree that Petitioner's mental condition has remained relatively unchanged for several years, encompassing the entire time period set forth above.  Therefore, if equitable tolling is appropriate here at all, it is appropriate for a sufficient number of days to render Petitioner's federal habeas petition timely.

4

## II.    The Evidentiary Hearing

Petitioner's counsel called two witnesses: (1) Dr. William Schneider, who was Petitioner's "treating psychiatrist from the time [Petitioner] was transferred to Phillips State Prison [("Phillips")] in March 2004 until [Dr. Schneider] left . . . in September 2008" (Hr'g Tr. 11); and (2) Dr. Adriana Flores, a psychologist, who did not know Petitioner during the relevant time period and testified solely about his competency to testify at the May 17 hearing (id. at 102).    Petitioner was Respondent's only witness.

### A.    Dr. Schneider's Testimony

Dr. Schneider testified that he previously had evaluated Petitioner's mental capacities and had concluded "that during the entire time period in question and during the entire time period [the doctor] treated [him, Petitioner] was severely mentally ill to the point where [Dr. Schneider] did not feel that [Petitioner] had the ability at all to file . . . a legal brief." (Hr'g Tr. 16.)  Dr. Schneider assessed multiple diagnoses according to the DSM-IV manual, including "mood disorder not otherwise specified with possible bipolar and/or major depressive disorder;[3] psychotic disorder

---

[3] Dr. Schneider opined that symptoms associated with the possible bipolar disorder included "racing thoughts, pressured speech, talking very quickly, being very impulsive, [and] mood swings."  (Hr'g Tr. 17.)  The Court observed one of those

not otherwise specified; polysubstance dependance; borderline personality disorder; and antisocial personality disorder." (<u>Id.</u> at 17.)  However, Dr. Schneider found it "difficult to pin down a diagnosis" because Mr. Lewis "exhibited severe symptoms of multiple spheres of psychiatry."  (<u>Id.</u> at 17, 20.)  Those symptoms included hallucinations, paranoia, disorganized thought process, depression, anger and impulsivity, and poor sleep.  (<u>Id.</u> at 17, 25, 27, 38.)  Petitioner "had a very hard time dealing with even minor stressors," and would sometimes cut himself as a coping mechanism.  (<u>Id.</u> at 18, 23-24.)

Dr. Schneider testified that Petitioner "could not really function above the activities of daily living," such as "taking basic care of his hygiene, being able to follow simple directions or commands, being able to have . . . basic conversations with people, being able to do simple activities, such as playing sports or he had some jobs . . . [in] prison such as mowing grass and . . . if there were small tasks that required some intellectual ability, he could perhaps do something very simple." (Hr'g Tr. 19.)  Dr. Schneider stated that his conclusions were "[t]o a reasonable

_____

symptoms – talking very quickly – at the hearing.  (<u>See id.</u> at 138-40 (Court requested once, and court reporter requested three times, that Petitioner speak more slowly).)

degree of psychiatric and medical certainty," and they applied to "the entire time" he treated Petitioner.  (Id. at 19-20.)

Dr. Schneider testified that he saw Petitioner for counseling "approximately every two weeks to every two months, it depended on how symptomatic he was," and Petitioner also "came up to the office very frequently and spoke to staff," so that Dr. Schneider saw Petitioner "on average . . . once a month."  (Hr'g Tr. 21.)  Because of the many mental disorders from which Petitioner suffered and the severity of those disorders, Dr. Schneider "was very aggressive with his medications," administering several different drugs to Petitioner.  (Id. at 27.)  Although Petitioner generally was either fully or partially compliant with those medications – sixty per cent and thirty per cent of the time, respectively – he did not show significant improvement, due to the resistance of his disorders to drug treatment.  (Id. at 25-30.)  Petitioner asked Dr. Schneider to write three letters for him regarding his mental condition and course of treatment, the last one because Petitioner "had missed the deadline for filing a habeas corpus."  (Id. at 42-46; Pet'r's Hr'g Exs. 5-7.)

The undersigned allowed Dr. Schneider to offer his opinion about Petitioner's performance at his state habeas hearing, based on Dr. Schneider's reading of that transcript.  (Hr'g Tr. 49-50.)  Dr. Schneider noted that during the hearing, Petitioner

7

"often was very confused; he lost his train of thought; he wasn't able to focus on an issue, would jump from one issue to another; . . . he appeared very anxious."  He also noted that although "there were episodes . . . where it seemed, for brief periods, that [Petitioner] sounded lucid[,] . . . his thought process [soon] became disorganized, confused, and he couldn't follow one thought to another and, in fact, often just gave up."  (Id. at 50-51.)[4]

Dr. Schneider opined that although Petitioner might have been able to set forth the basic facts of his criminal case in his federal habeas petition, he could not have provided, on his own, legal and factual support for his claims due to "a combination of [not] being able to concentrate and focus and also . . . he [lacked] the intellectual ability to do this."   (Hr'g Tr. 51-52.)   To summarize his direct examination testimony, Dr. Schneider stated that, at his best, Petitioner "had multiple different symptoms of multiple different psychiatric spheres and he never stabilized on multiple medications at high doses."  (Id. at 55.)  Moreover, "[h]e was, almost all of the time, in a state of distress and I do not believe that he could have prepared something as complicated as a legal brief."  (Id.)

---

[4] The Court's view of Petitioner's performance at his state habeas hearing differs greatly from that of Dr. Schneider.  (See infra pages 26-28.)

8

On cross-examination, Dr. Schneider testified that out of a prison population of about 1,100 at Phillips during the time he treated Petitioner, about 200 were patients who had been diagnosed with mental health problems.  (Hr'g Tr. 58-59.)[5] He testified that he never formally assessed Petitioner's intelligence or memory, although he had not noticed any memory problems.  (Id. at 60-62, 85-86.)  Regarding the simple intellectual tasks he earlier had testified Petitioner could perform, Dr. Schneider elaborated that Petitioner "was able at times to write . . . a simple rebuttal" to a prison disciplinary report, which Petitioner had done on his own on more than one occasion, involving "such things as that it wasn't served in time; . . . that the officer wasn't telling the truth; . . . that . . . if he was accused of having contraband on him, that he didn't have it."  (Id. at 68.)  Dr. Schneider had reviewed some of these responses, and he concluded that they looked "coherent," but he noted that, in his opinion, "there's a big difference between being able to write a one-page sheet saying that this [disciplinary report] wasn't served in time versus writing a complicated legal brief . . . citing cases that would take . . . days and weeks or longer

---

[5] According to Dr. Schneider, the mental health patients are housed in a separate dormitory from the general population.  (Hr'g Tr. 58.)  Petitioner was housed with the general population "during some of the time," but that was "a mistake" and he "did not do well at all and we put him back" in the mental-health dormitory.  (Id.)

9

to perform when he's having multiple symptoms."  He also testified that Petitioner could write a "brief letter stating some facts" or complete a simple form, such as a list of persons authorized to "mail him packages and specifically what things . . . he would be able to receive."  (Id. at 69-70.)  Dr. Schneider testified that the mental health staff at Phillips did not have daily contact with Petitioner, and, in fact, Petitioner did not experience every symptom – such as "confused or racing thoughts or . . . difficulty focusing and concentrating" – every day.  (Id. at 70-71.)

Finally, Dr. Schneider testified to the following about Petitioner: he was always "oriented to person, place, time, and situation," i.e., "he was never delirious" or "disoriented"; he was in the Crisis Stabilization Unit (CSU) on October 23, 2007, which, as noted below, is the date he executed his *in forma pauperis* affidavit for this case;[6] he was admitted to the CSU on three occasions because he had overdosed on drugs; he used  illegal drugs approximately ten to twenty per cent of his time in prison; he could count the thirty days between the time he allegedly violated a prison rule and the time a disciplinary report regarding the alleged violation was due; and

---

[6] In the CSU, prisoners "had no access to pen or paper or any reading materials," and no contact with other prisoners.  (Hr'g Tr. 32-33.)  Despite that claimed lack of access, Petitioner signed his *in forma pauperis* affidavit while in the CSU.

10

he could appeal the report if it were served on him after the deadline.  (Hr'g Tr. 73-83.)

### B.     Dr. Flores's Testimony

Dr. Flores testified that, in order to evaluate Petitioner's competency to testify, she reviewed his mental health records from Phillips and from his 2001-02 participation in an outpatient community mental-health center, and she concluded that, at Phillips, Petitioner "was exhibiting psychotic symptoms; symptoms of mania; and then also symptoms of depression; [and] self-harming behaviors as well," and that his outpatient "symptoms were very consistent with what appears on the records from Phillips."  (Hr'g Tr. 103-05.)  Dr. Flores noted that Petitioner reported that "he had begun cutting himself at age nine," indicating "a very long history of illness."  (Id. at 106.)  When Dr. Flores interviewed Petitioner shortly before the hearing, she noted that he is "hyperverbal, which is a sign of . . . mania. . . . [–] the tendency to speak a lot, . . . more than you have to," which causes "his thought process [to] get very confused" and also causes him to become agitated and frustrated.  (Id. at 109-12.)

Dr. Flores tested Petitioner's memory and found that he has "a very severe auditory memory deficit" and a "low-average" visual memory.  (Hr'g Tr. 114, 116.)

11

Dr. Flores attributed Petitioner's poor auditory memory to his "inability to focus," his difficulty concentrating for long enough, and his impulsiveness. (Id. at 118.) She concluded that Petitioner was not competent to testify because he has difficulty recalling information, understanding questions posed to him, and answering those questions clearly, all of which she attributed to Petitioner's symptoms of mental illness – "his agitation, his low frustration tolerance, his inability to cope with stress." (Id. at 120-22.)

Despite the concerns expressed by Dr. Flores, the undersigned allowed Petitioner to testify because there was no evidence that he did not understand his oath and the requirement to testify truthfully.  However, the Court cautioned Respondent's counsel to be patient and careful while questioning Petitioner, due to the psychologist's opinion that he had difficulties coping with stress.  (Hr'g Tr.  133.)

### C.    Petitioner's Testimony

Petitioner testified that he had completed the eleventh grade in school, had received his GED certificate, and had never been diagnosed as mentally retarded. (Hr'g Tr. 134-35.)  He testified that he did not write out his own federal habeas petition, but only copied it, in part, while a fellow prisoner, Ricky Sweet, "copied it with me with my help."  He also testified that "the first part of it is [mine] . . . and the

12

rest . . . is Ricky Sweet's part of it and some of our own notes."  (Id. at 136-37.)

Petitioner testified that his roommate, Jerry Long, asked Lucious Johnson, another

prisoner at Phillips, to file Petitioner's federal habeas petition, and paid Johnson to

do so.[7]  Petitioner testified that no one ever refused his requests for help, and, in fact,

"ever since I [have] been incarcerated, everybody just helps me out," on their own,

without being asked.   (Id. at 140; see Pet'r's Hr'g Exs. 13-16 (affidavits of

Petitioner's fellow inmates at Phillips, including Lucious Johnson, explaining how

they helped Petitioner prepare his post-conviction pleadings for filing in state and

federal court).)   Petitioner acknowledged that he had filled out lists of persons

allowed to contact him and send him mail in prison, and also lists of items he would

like from the prison store.  (Id. at 142.)  Petitioner's direct testimony ended when he

attempted to explain how prison officials had handled his various disciplinary

infractions – they either sent him to "DR court" for "stealing or cussing or smoking

in the dormitory," or sent him to "CSU . . . or to a butt-naked cell," without first

sending him to DR court, for climbing on "the back of the batting cage and . . .

hang[ing] up there or something like that."  (Id. at 143-44.)

---

[7] As an aside, Petitioner testified that he had been offered a five-year sentence
for his crimes of conviction, but had declined the offer and ultimately, after being
resentenced, received a sentence of life without parole.  (Hr'g Tr. 138-39.)

On cross-examination, Petitioner testified that the most he has done with respect to his own legal work "is copy what's been wrote down or . . . help . . . write it out" – so that unless something has been written down for him, he cannot write it himself. (Hr'g Tr. 145.)

### III.   **The Parties' Arguments**

#### A.   **Respondent's Post-Hearing Brief**

Noting Dr. Schneider's testimony regarding the prevalence of mental illness in state prisons, Respondent first argues that Petitioner's "purported mental illness is not an 'extraordinary circumstance'" warranting equitable tolling. (Resp't's Post-Hr'g Br. Supp. [56] 6.) Next, Respondent argues that because Petitioner had the ability to file a timely federal habeas petition, "there is no causal connection between his purported mental illness and his failure to timely file his petition." (Id.) Although Dr. Schneider testified that Petitioner could not have completed, on his own, a pleading as complex as his federal habeas petition, Respondent argues that Dr. Schneider misunderstands what is required to complete and file such a petition. Noting that *pro se* pleadings are construed liberally, Respondent contends that Petitioner "could have copied the grounds straight from his [direct] appeal and his state habeas petition." Respondent argues that, given Petitioner's educational

background and intellectual abilities, he was capable of doing that simple task, despite his mental impairments, just as he was capable of filling out forms and writing coherent rebuttals to disciplinary reports, which required him, on at least one occasion, to "calculat[e] the time periods relevant to the service and filing of disciplinary reports." (<u>Id.</u> at 7-9.) Respondent argues that even if "a mental illness can constitute extraordinary circumstances sufficient to justify the application of equitable tolling, Petitioner has not established the necessary causal connection" between his illness and his failure to file a timely federal petition. (<u>Id.</u> at 14.)

Respondent also notes that even lockdown was not necessarily an impediment to Petitioner's timely filing the necessary pleadings in this Court, inasmuch as he was housed in a CSU on October 23, 2007, the date the Court has deemed his federal habeas petition filed because that is the date he executed his *in forma pauperis* affidavit. (Resp't's Post-Hr'g Br. Supp. 16; Aff. [2].) Respondent also argues that Petitioner is not entitled to equitable tolling for the periods of time during which he was voluntarily locked down or isolated due to his having ingested an overdose of illicit drugs or due to his having been non-compliant with his medications. (Resp't's Post-Hr'g Br. Supp. 18-20.) Respondent next argues that courts in this Circuit have held that a federal habeas petitioner's purported reliance on a fellow inmate to file

15

his petition does not justify equitable tolling.  (<u>Id.</u> at 20-22 (citing cases).)  Finally, Respondent argues that Petitioner has not demonstrated diligence in the pursuit of his federal habeas remedies, noting specifically that Petitioner has offered no evidence that he ever attempted to determine when the limitations period would expire. Respondent also notes that Petitioner offered no evidence at the evidentiary hearing regarding any other basis for equitable tolling or in support of his claim that the time bar should be lifted due to his actual innocence.  (<u>Id.</u> at 22-24.)

### B.      **Petitioner's Response**

Petitioner responds by first citing the Supreme Court's recent decision in <u>Holland v. Florida</u>, No. 09-5327, 2010 U.S. LEXIS 4946 (June 14, 2010), for the proposition that there is "a rebuttable presumption *in favor* of equitable tolling" in federal habeas cases.   (Pet'r's Resp. Opp'n Resp't's Mot. Dismiss [57] 2-3.) Petitioner notes that his failure to present evidence regarding alternate bases for equitable tolling is due to the Court's restrictions on the subject matter of the May 17 hearing, and is not a waiver of his other claims in this regard.  (<u>Id.</u> at 5 n.2.)

Petitioner first argues that he has shown reasonable diligence in the pursuit of his federal habeas remedies, including having submitted three separate requests for assistance from Dr. Schneider and having gone to "great lengths" to find fellow

16

inmates to prepare his legal materials, which he was incapable of preparing on his own.  (Pet'r's Resp. Opp'n 5-8.)  Next, Petitioner contends that "Respondent has offered nothing to rebut [his] showing that he suffers from severe and chronic mental illnesses that left him capable of only the basic tasks of daily living during the period of time relevant for equitable tolling." (Id. at 8.)  Petitioner notes that Respondent has offered no expert with a view different from that of Dr. Schneider's, and argues that, "in terms of his qualifications, the scope of his review of medical records, and – most critically – his personal familiarity with [Petitioner's] case, [Dr. Schneider] is an unassailable authority."  (Id. at 8-9.)

Petitioner argues that despite Respondent's contention to the contrary, his severe mental impairments are an extraordinary circumstance warranting equitable tolling, as the Eleventh Circuit "has at least implicitly acknowledged" in Hunter v. Ferrell, 587 F.3d 1304 (11th Cir. 2009).  (Pet'r's Resp. Opp'n 11-12.)  Petitioner asserts that Respondent has mischaracterized the testimony of Dr. Schneider, who "has repeatedly emphasized the unusual severity of [Petitioner's] mental illnesses," including his testimony that Petitioner "was chronically, severely ill for almost the entire time that [he] treated him."  (Id. at 12.)  Petitioner also rejects Respondent's assertion that the widespread prevalence of mental illness at Phillips renders his own

severe mental illness anything less than an extraordinary circumstance. (<u>Id.</u> at 13 n.6.)

Petitioner contends that Respondent "again reduces drafting a federal habeas corpus petition to filling out a form." Petitioner claims that Respondent fails to see that initiating a federal habeas petition is not "easy enough for someone as ill as [Petitioner] to manage without assistance." (Pet'r's Resp. Opp'n 14.) Petitioner lists a series of assertions made by Respondent regarding Dr. Schneider's testimony that are contradicted by that same testimony, including, for example, Respondent's statement that Dr. Schneider could only guess at how often Petitioner was entirely symptom-free, when, in fact, he testified that Petitioner was symptom-free for no more than one month or, at most, two months, in the four and one-half years during which Dr. Schneider treated Petitioner. (<u>Id.</u> at 15-18; Hr'g Tr. 19, 70 (Dr. Schneider's testimony regarding Petitioner being symptom-free); <u>see also</u> Pet'r's Resp. Opp'n 16 (noting that Respondent "evidently equat[es] the understanding that you were not served with a disciplinary report within thirty days to calculating your due date under the AEDPA's statute of limitations, despite the latter's myriad and complicated rules as to when it is tolled").) Petitioner reiterates his assertion that he

18

was never able to prepare any post-conviction pleading for filing in either state or federal court without the assistance of others.  (Pet'r's Resp. Opp'n 17.)

Petitioner rejects Respondent's attempts to impugn Dr. Schneider's qualifications to assess Petitioner's ability to prepare a federal habeas petition; rejects Respondent's contention that Petitioner's "behavior at his state habeas hearing shows that he 'was able to do much more than what is typical' of a *pro se* inmate"; "submits that his mental illnesses were obviously manifest during his testimony" at the May 17 hearing; and states in general that his many symptoms – "which include hallucinations, paranoia, disorganized thought processes, racing thoughts, impulsivity, mood swings, suicidal ideation and suicide attempts, and the inability to tolerate even minor stresses without harming himself" – demonstrate the difficulty he has in communicating with others and in obtaining the assistance he needed to file a timely federal habeas petition.  (Pet'r's Resp. Opp'n 18-21.)  Finally, Petitioner argues that the time he spent in the CSU or in other forms of lockdown, his suicide attempts, his occasional non-compliance with his medications, and his three overdoses on illicit drugs all support his claim to equitable tolling because they are all "at least in part consequences and symptoms of his mental illnesses." (Id. at 21-24.)  In summary, Petitioner argues that "he was wholly dependent on the willingness

and availability of his fellow prisoners to write pleadings for him or tell him what to write," which "supports his claim of entitlement to equitable tolling due to his mental illnesses." (Id. at 25.)

### C.    **Respondent's Reply**

Respondent replies that the Supreme Court's decision in Holland does not change the burden upon Petitioner to demonstrate that he is entitled to equitable tolling. (Resp't's Post-Hr'g Reply Br. [58] 1-3.)   Respondent next argues that Petitioner has not demonstrated the diligence necessary to justify equitable tolling. Respondent contends that Petitioner's assertion that he was diligent because he went to great lengths to find inmates to prepare his legal materials is refuted by his own hearing testimony, in which he stated that he never asked for help from fellow inmates because they offered to help him on their own, without his asking them. (Id. at 3.)   Respondent also contends that Petitioner's requests for assistance from Dr. Schneider were not part of his attempts to file a timely federal habeas petition – only his last request related to the federal petition, and that request involved his attempt to justify equitable tolling after this Court had ruled the petition to be otherwise untimely. (Id.) Respondent contends that "Petitioner has not even alleged, must less proven, that he was diligent in calculating when the limitations period

20

would expire," and contends further that "Dr. Schneider's testimony proves that Petitioner was, *at the very least*, capable of asking for help, understanding the necessity of pursuing his legal rights, calculating deadlines, [and] preparing, on his own, forms and coherent statements of facts in support of his position." (Id. at 4.) Respondent argues that Petitioner has provided only conclusory assertions that his symptoms prevented him from at least seeking the assistance he needed to prepare and file a timely federal habeas petition. (Id. at 6.)

**IV.    The Law of Equitable Tolling**

Equitable tolling is an "extraordinary remedy" that "is typically applied sparingly" – when a petitioner establishes both "(1) diligence in his efforts to timely file a habeas petition and (2) extraordinary and unavoidable circumstances." Arthur v. Allen, 452 F.3d 1234, 1252 (11th Cir.), modified on other grounds, 459 F.3d 1310 (11th Cir. 2006). Moreover, the petitioner bears "the burden of establishing that equitable tolling [is] warranted." Pugh v. Smith, 465 F.3d 1295, 1300-01 (11th Cir. 2006). A petitioner's contention that "he has suffered from mental impairments his entire life. . . ., without more, is insufficient to justify equitable tolling." Lawrence v. Florida, 421 F.3d 1221, 1227 (11th Cir. 2005) (citing Bilbrey v. Douglas, 124 F. App'x 971, 973 (6th Cir. 2005), for proposition "that equitable tolling did not apply

21

because petitioner 'failed to establish a causal connection between her mental condition and her ability to file a timely petition'"), aff'd, 549 U.S. 327, 127 S. Ct. 1079 (2007).

The Supreme Court's recent decision in Holland does not change this analysis. In Holland, for the first time, the Supreme Court, "like all [eleven] Courts of Appeals that have considered the question, [held] that § 2244(d) is subject to equitable tolling in appropriate cases." 2010 U.S. LEXIS 4946, at *23. It did so in part because "a nonjurisdictional federal statute of limitations [like AEDPA's] is normally subject to a rebuttable presumption in *favor* of equitable tolling." Id. at *24 (internal quotations omitted). However, this presumption involves only the legal question of whether equitable tolling is available, and does not change the burden upon the petitioner to demonstrate his entitlement to it. The Holland court reiterated that "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at *30 (internal quotations omitted); see also Fox v. McNeil, No. 09-12897, 2010 U.S. App. LEXIS 7302, at *4-5 (11th Cir. Apr. 8, 2010) (concluding that petitioner had "not met his burden to prove that equitable tolling is appropriate" because he had "failed to establish a causal link

22

between his claims of mental incompetence and the untimely filing of his federal habeas corpus petition"); <u>Wade v. Battle</u>, 379 F.3d 1254, 1265 (11th Cir. 2004) (stating that to warrant equitable tolling, petitioner must show that "extraordinary circumstances . . . both beyond his control *and* unavoidable even with diligence" prevented him from timely filing his petition); <u>Dodd v. United States</u>, 365 F.3d 1273, 1283 (11th Cir. 2004) (stating that petitioner must show with "particularity what efforts he made that would . . . arguably constitute an appropriate degree of diligence for someone in his situation"); <u>Helton v. Sec'y for the Dep't of Corr.</u>, 259 F.3d 1310, 1313 (11th Cir. 2001) (reversing district court's application of equitable tolling, in part because petitioner could not "establish his own due diligence in ascertaining the applicable limitations period"). To the extent that Petitioner argues that the "presumption" noted in <u>Holland</u> affects the foregoing evidentiary burdens (see <u>Pet'r's</u> Resp. Opp'n 2-3, 8, 25), his argument is not well-taken.[8]

---

[8] <u>Holland</u> did not involve the alleged mental illness of the petitioner, and, therefore, is not otherwise relevant to the case now before the Court. Although the <u>Holland</u> Court did state that "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence," <u>Holland</u>, 2010 U.S. LEXIS 4946, at *37 (citation and internal quotations omitted), that comment offers little if any guidance here because of the differing circumstances of the two cases and because of the extensive evidence of the petitioner's diligence in <u>Holland</u>, as noted by the Court. <u>See id.</u>

**V.**     <u>Analysis</u>

In an earlier R&R, the undersigned set forth the following summary of the law affecting the equitable tolling issue in this case, noting that the Court was

> not aware of any case in which the Eleventh Circuit has allowed equitable tolling based on a habeas petitioner's mental infirmities, and [was] aware of only one case in which a district court in this Circuit has done so. <u>See</u> <u>Morrow v. Williams</u>, No. 2:06-CV-7 (N.D. Ga. Mar. 23, 2007) (Order adopting Report and Recommendation to deny motion to dismiss federal habeas petition as time-barred due to petitioner's severe cognitive deficiencies). In <u>Hunter v. Ferrell</u>, 587 F.3d 1304, 1310 (11th Cir. 2009), however, the Eleventh Circuit vacated a time-bar dismissal of a 28 U.S.C. § 2254 petition and remanded the case to the district court "for further investigation and factual development" regarding whether the petitioner's severe mental impairments entitled him to equitable tolling that would render his 2008 habeas petition timely. The Eleventh Circuit noted a doctor's 1997 pretrial competency report showing that the petitioner "is at the low-end of the mildly retarded range"; that "his mental retardation moderately to severely impairs his judgment, insight and problem-solving skills, which makes him unable to function independently"; that "he is illiterate"; and that "he suffers from severe expressive speech aphasia which makes it difficult for him to communicate intelligibly." <u>Id.</u> at 1309. The Eleventh Circuit noted that the petitioner was able to file his three state post-conviction petitions "only with the help of others," and the 1997 competency report – that his "mental retardation is significant and irreversible" – "remains probative of [his] mental impairment as to the § 2254 petition during the limitations period and beyond to 2008. And, the state has offered no evidence in response to [petitioner's] averments that he is not able to manage his affairs, he is not able to understand his legal rights or act upon them and his mental retardation prevented him from timely filing a § 2254 petition." <u>Id.</u> The Eleventh Circuit concluded that the petitioner's "evidence, while not sufficient to establish definitively that

24

the filing deadline should be equitably tolled (at all or for how long), is sufficient to raise a factual issue as to whether a causal connection exists between his mental impairment and his ability to file a timely § 2254 petition, precluding summary judgment." Id. at 1309-10.

(Second R&R 33-34.)[9]

Based on that law and the record then before the Court, the undersigned previously found "the alleged impairments of the petitioner in Hunter much more severe than those of Petitioner here, alleged or otherwise, which demands an outcome different from that in Hunter." (Second R&R 34.)  The undersigned must now determine whether that earlier conclusion must be reversed in light of the evidence presented at, and in connection with, the May 17 hearing.

Petitioner's primary witness at the hearing was Dr. Schneider.  Although this psychiatrist provided some additional details about the Petitioner's activities during the relevant time period (discussed supra), his testimony largely mirrored what he had written in the Report [26-7] filed with the Court on May 6, 2009.  In that Report, Dr. Schneider summarized his opinion about Petitioner as follows:

Phillip Lewis is severely mentally ill.  During the entire four years I treated him, which includes the time in question, he never stabilized and continued to suffer from multiple symptoms, often many at the same

---

[9] Neither party has presented any intervening case law, aside from Holland, that might affect the outcome here, and the undersigned is not aware of any such case law.

time, despite intensive treatment.  Additionally, he was often so ill he had to be placed in the prison's crisis units.

At his best, [Mr. Lewis] was able to carry out only the basic skills of daily living, while he was still almost constantly experiencing one or more of the disabling manifestations of his mental illness, whether it be suicidal ideation, self-mutilation, auditory hallucinations, paranoia, severe depression, an inability to focus or concentrate, or any of the myriad of other symptoms associated with his illness.  It is my professional opinion that Mr. Lewis's severe chronic mental illness made him far too symptomatic and unstable to successfully accomplish any complicated task, particularly one as complex as filing a legal brief.

(Id. at 5-6.)

Although accepting Dr. Schneider's opinion that Petitioner is mentally ill, the undersigned noted that Mr. Lewis was able to represent himself at his state habeas hearing in November 2005, at a time when, according to Dr. Schneider, he could perform little more than the "basic skills of daily living."  Conceding that the Petitioner at times appeared confused, disoriented, and unable to maintain his train of thought,[10] the Court found that he presented his case at least as effectively as other pro se habeas corpus petitioners.  (Second R&R 39 & n.7.)  Indeed, the presiding

---

[10] Petitioner testified that, on the day of the state habeas hearing, he was taking 800 milligrams of Seroquel.  According to Mr Lewis, that dosage "slows me down but don't stop me."  (State Habeas Hr'g Tr. [7-3] 64-65.)

Superior Court Judge told Petitioner that he "did fine" representing himself.  (State Habeas Hr'g Tr. 76.)

Review of that state habeas hearing transcript confirms that Petitioner performed more than "basic skills of daily living."  In the cross examination of his trial counsel (Jerry Moncus, Esq.), Petitioner asked questions designed to support his primary state habeas argument – ineffective assistance of counsel.  For example, Petitioner reminded counsel of the numerous bar complaints that he had filed against him.  (State Habeas Hr'g Tr. 44-45.)  Moreover, Petitioner questioned counsel about his claim that he had remained in regular contact with Petitioner while he was imprisoned awaiting trial.  (Id. at 45-48; see also id. at 66-67 (direct testimony asserting that counsel never came to visit him in jail.)  Petitioner also challenged counsel's contention that they had discussed and agreed upon trial strategy, asserting that he did not agree to waive his right to testify or to waive his right to challenge the state's admission of DNA evidence from the crime scene.  (Id. at 49-51.)  Mr. Lewis also made clear that he disagreed with counsel's assertion that Petitioner claimed to have had consensual sex with the victim.  (Id. at 49, 52, 60; see also id. at 68 (direct testimony denying that he told counsel that he and the victim had consensual sex).)  Petitioner additionally chastised counsel for failing to raise his mental illness as a

27

defense.   (Id. at 56-57; see also id. at 67-68 (direct testimony making same assertion).)  Petitioner also questioned counsel about whether they had discussed the fact that he faced the possibility of life without parole if convicted.  (Id. at 63.) Petitioner exhibited an understanding of the contents of the report of the state's medical witness, Dr. Biggers (id. at 60), and of the nature of the sentencing error that occurred in his case.  (Id. at 61-65.)  Finally, in direct testimony, Petitioner accused counsel of misleading him about his sentence.  (Id. at 68.)

These rather sophisticated lines of inquiry belie the claim that Petitioner was able to carry out only the basic activities of daily living and raise doubts about the accuracy of Dr. Schneider's opinion about Petitioner's capabilities.  In other words, the objective evidence of Petitioner's performance differs from Dr. Schneider's subjective opinion of how he should be able to perform.

Although Dr. Schneider continued to assert at the hearing that Petitioner "could not really function above the activities of daily living" (Hr'g Tr. 19), his descriptions of Petitioner's activities during the relevant time period show that he functioned at a higher level.  For example, Petitioner was able to fill out simple forms regarding items he needed from the prison store and persons who would be allowed to contact him or to send him mail and packages.  Moreover, Petitioner was able to

28

respond coherently to disciplinary reports filed against him, including challenging reports that were given to him beyond the thirty-day deadline for doing so.

As the undersigned has acknowledged before, Petitioner suffers from multiple mental impairments that are well documented.  (See Hr'g Ex. 3.)  Despite those impairments, Petitioner understands the concept of a time limitation for the filing of pleadings and other documents, both from his experience objecting to untimely disciplinary reports and from the dismissal by the Georgia Supreme Court, as untimely, of his CPC application to appeal the denial of his state habeas petition.[11] Even though it appears that Dr. Schneider correctly opined that Petitioner could never have researched and composed the federal habeas petition that he eventually filed, that opinion is not dispositive here.  Petitioner was not required to file a "complicated legal brief" in order to satisfy AEDPA's one-year filing deadline. Instead, to satisfy the pleading requirement in this case, he need have done no more than copy his state habeas petition onto a federal habeas corpus complaint form, with minor adjustments as required by the varying formats, and then submit that petition

---

[11] Despite the Georgia Supreme Court's determination that Petitioner had missed the thirty-day deadline for appealing the denial of his state habeas petition, Petitioner filed a timely CPC application in the Georgia Supreme Court and filed in the state habeas court both that application and two separate notices of appeal, all within a six-week period in April-May 2006.  (See Second R&R 8-10.)

29

to this Court.  In fact, Petitioner acknowledges that he personally copied some of the material onto the federal habeas petition that he eventually filed.

Petitioner has offered little evidence to demonstrate that he has satisfied the diligence requirement for equitable tolling.  He has not indicated that he ever requested assistance from his fellow prisoners.  To the contrary, he has indicated that assistance was offered to him without his asking.  He has not indicated that, unlike with respect to the disciplinary reports he received, he ever attempted to ascertain the limitations period for his federal habeas petition.  His only other affirmative acts noted in the record are his three requests to Dr. Schneider for letters regarding his mental condition.  The first letter is dated August 23, 2005, mailed while Petitioner's state habeas petition was still pending and the federal limitations period was tolled, and does little more than demonstrate that Petitioner was aware of his legal situation and of the relevance of his mental condition to his request for post-conviction relief in the state courts.  (See Hr'g Ex. 5.)  The second letter is dated January 12, 2007, and also falls within the relevant time period, i.e., during the running of the federal limitations period, but is directed to the Georgia Supreme Court after that court had dismissed Petitioner's CPC application.  (See Hr'g Ex. 6.)  The third and final letter is dated September 3, 2008, and, although directed to this Court, was written well

30

outside of the limitations period, and, therefore, is not evidence of Petitioner's diligent pursuit of his federal habeas remedies during the relevant time period.  (See Hr'g Ex. 7.)[12]  Based on the foregoing, the undersigned concludes that Petitioner has not shown with "particularity what efforts he made that would . . . arguably constitute an appropriate degree of diligence for someone in his situation."  See Dodd, 365 F.3d at 1283.

Moreover, the undersigned concludes that Petitioner has not established a "causal connection between [his] mental condition and [his] ability to file a timely petition."  Lawrence, 421 F.3d at 1227; see also Murphy v. Hall, CV 109-043, 2009 WL 1579494, at *1 (S.D. Ga. June 4, 2009) ("[T]he Court is not persuaded that his mental illness was the cause of his untimely filing.  Indeed, Petitioner's diagnosis . . . predates his filings in state court, yet he still managed to discern how to proceed through the state system.").

---

[12] It is noteworthy that Dr. Schneider wrote in that third letter that Petitioner "has been using illicit drugs in prison very frequently and at times, severely, by his own admission" (see Hr'g Ex. 7 ¶ 3), which throws additional light upon Dr. Schneider's hearing testimony that Petitioner used illicit drugs in prison only ten to twenty per cent of the time, suggesting by that testimony that Petitioner used illicit drugs less than "very frequently."  In the same vein, Respondent concludes that "Dr. Schneider's testimony clearly conveyed that he desired to help Petitioner" overcome the federal habeas corpus time bar.  (Resp't's Post-Hr'g Br. Supp. 6.)

Like the petitioner in <u>Murphy</u>, despite his mental infirmities, Mr. Lewis was able to represent himself in the state habeas system, which included filing documents and representing himself at a hearing.  Moreover, he could respond coherently to disciplinary reports, complete portions of his federal habeas petition, and copy other portions that were written out for him.  Given that Petitioner had the ability to do these things, he has not demonstrated that his mental condition prevented him from timely filing a "bare bones" federal habeas petition.  There is only a difference in degree, not in kind, between the things that the record establishes Petitioner could do on his own, or with a modicum of assistance, and the things he would have needed to do to file a timely federal habeas petition.

Moreover, the federal habeas petition that Petitioner eventually filed is modeled after his state habeas petition, and, indeed, with the embellishments and additional analysis to be expected from the work of a trained attorney, his amended petition is also.  Therefore, although Petitioner's multiple and longstanding mental health problems may indeed constitute an extraordinary circumstance for equitable tolling purposes, Petitioner has not demonstrated a causal link between that circumstance and his failure to file a timely federal habeas petition, nor has he demonstrated diligence or, alternatively, that with the diligent effort of which he was

32

capable, he could not have overcome his mental infirmities to file a timely federal habeas petition.  See Holland, 2010 U.S. LEXIS 4946, at *30; Wade, 379 F.3d at 1265.

In short, the record evidence before the Court, including that presented at, and in connection with, the May 17 evidentiary hearing, does not meet Petitioner's burden to show a causal link between his mental infirmities and his untimely federal habeas petition.  That evidence also does not meet Petitioner's burden to show that he exercised sufficient diligence – or that he was always so incapacitated during the relevant time period as to be unable, with diligence, to overcome his mental infirmities – in seeking to file a timely federal habeas petition.  Accordingly, the undersigned reports that Petitioner is not entitled to equitable tolling and that his federal habeas petition is untimely.

## VI.   <u>Certificate of Appealability</u>

A state prisoner must obtain a certificate of appealability (COA) before appealing the denial of his federal habeas petition.  28 U.S.C. § 2253(c)(1)(A).  This Court "must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner.  Rule 11(a) of the Rules Governing Section 2254 Cases (also providing that "[i]f the court denies a certificate, the parties may not

appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22").

A COA may issue only when the petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Slack v . McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04 (2000) (internal quotations omitted).  For a COA to issue on a procedural issue, jurists of reason must find it debatable both "whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling."  Id. at 478, 120 S. Ct. at 1601.

Based on the foregoing, the undersigned considers it at least arguable among jurists of reason whether Petitioner's mental condition warrants equitable tolling of the federal statute of limitations.  Accordingly, the undersigned recommends that Petitioner be granted a certificate of appealability on the following issue only:

> Is Petitioner's mental illness sufficiently severe to establish a causal connection between his mental illness and his failure to file a timely federal habeas corpus petition, and if so, did Petitioner pursue his

34

federal habeas remedies with reasonable diligence to warrant the application of equitable tolling, thereby rendering his federal habeas petition timely?

**VII.** <u>**Conclusion**</u>

For the foregoing reasons, **IT IS RECOMMENDED** that Respondent's Renewed Motion to Dismiss Petition as Untimely [32] be **GRANTED**; this habeas corpus action [1] be **DISMISSED** as time-barred; and Petitioner be **GRANTED** a certificate of appealability on the issue set forth above.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO RECOMMENDED** this 22nd day of July, 2010.

_Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

35

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


PHILLIP MORRIS LEWIS,          ::      CIVIL ACTION NO.
Inmate # GDC 510782, EF 236089, ::      1:07-CV-2803-JEC-WEJ
    Petitioner,            ::
                           ::
    v.                     ::
                           ::
SHEILA OUBRE, Warden,          ::      PRISONER HABEAS CORPUS
    Respondent.            ::      28 U.S.C. § 2254

## ORDER FOR SERVICE OF
## FINAL REPORT AND RECOMMENDATION

Let this Final Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and the Court's Local Rule 72.1B, be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Final Report and Recommendation within fourteen days of the receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing

for review by the District Court.  If no objections are filed, the Final Report and

Recommendation may be adopted as the opinion and order of the District Court and

any appellate review of factual findings will be limited to plain error review.  United

States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

The Clerk is directed to submit the Final Report and Recommendation with

objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED** this 22nd day of July, 2010.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

2